[Cite as *State v. Zhu*, 2021-Ohio-4577.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio | : | |
| Plaintiff-Appellee, | : | No. 21AP-10 |
| | | (M.C. No. 2020CRB-1960) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Qian Zhu, | : | |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on December 28, 2021

**On brief:** *The Law Office of Brian Jones, Brian G. Jones* and *Elizabeth E. Osorio,* for appellant. **Argued:** *Brian G. Jones.*

**On brief:** *Zack M. Klein*, City Attorney, *Orly Ahroni,* for appellee. **Argued:** *Orly Ahroni.*

APPEAL from the Franklin County Municipal Court

SADLER, J.

{¶ 1} Defendant-appellant, Qian Zhu, appeals from a judgment of the Franklin County Municipal Court convicting him of one count of sexual imposition, pursuant to a jury verdict, and imposing sentence. For the following reasons, we affirm.

I. FACTS AND PROCEDURAL HISTORY

{¶ 2} Zhu was charged with one count of sexual imposition, a third-degree misdemeanor in violation of R.C. 2907.06(A)(1). The charge arose from events that occurred on December 31, 2019, when Zhu performed a massage on S.P. at Touch Therapy Massage, where Zhu was employed.

{¶ 3} A jury trial on the charge commenced on September 28, 2020. S.P. testified she suffered from "tennis and golfer's elbow" in her right arm and had back and hip injuries

from falling.  (Tr. Vol. I at 126.)  As a result, S.P. had problems with "sciatica and the piriformis muscle" in the "area on the outside of [her] buttocks."  (Tr. Vol. I at 126.)  The sciatica condition affected her lower back, outside of her hip and buttocks, and her right leg.  During 2019, S.P. received regular massages at Massage Envy to address these conditions.  S.P. unsuccessfully attempted to schedule a massage at Massage Envy for December 31, 2019, when she had a day off work.  She then scheduled a massage at Touch Therapy Massage, where she had received massages "a few times a couple years [earlier]." (Tr. Vol. I at 128.)

{¶ 4}  When S.P. arrived for her appointment at Touch Therapy Massage on December 31, 2019, she completed paperwork, including "a crude drawing of a little * * * person, * * * front and back, where you mark what areas are sensitive and what areas you're having pain in."  (Tr. Vol. I at 131.)  She marked the drawing to indicate she wanted to be massaged on both sides of both arms and from her upper back to the bottom of her gluteal muscles.  S.P. drew a line near the bottom of the buttocks intended to indicate she did not want a lower body or foot massage.  S.P. admitted the line was near the thigh area of the sketch.  S.P. was introduced to Zhu and explained the areas she wanted massaged.  Zhu responded affirmatively, but S.P. noted Zhu's brief response suggested "he didn't have a very strong command of the English language."  (Tr. Vol. I at 135.)

{¶ 5}  The massage began with S.P. lying face-down; Zhu first massaged her upper back and shoulders.  While Zhu massaged her shoulders, she could feel Zhu's body "pressed up against [her]."  (Tr. Vol. I at 138.)  She also felt Zhu "pressed up against the top of [her] head" when he was standing near the head of the massage table.  (Tr. Vol. I at 138.)  The table was approximately level with Zhu's waist and genital area.

{¶ 6}  After massaging S.P.'s head and shoulders, Zhu briefly massaged her gluteal and hip area, and then "moved down to [her] lower buttocks, like underneath [her] butt cheek area and [her] upper thighs."  (Tr. Vol. I at 139.)  S.P. had not intended to have her upper thigh area massaged.  Zhu then began massaging S.P.'s inner thigh.  While moving between her inner thigh and buttocks, Zhu "touched [S.P.'s] vagina several times."  (*Id.*) S.P. described this as an "open-handed, full touching," stating she "could feel what seemed like all four of his fingers go all the way across."  (*Id.*)  The contact happened three or four times while S.P. was lying on her stomach.  After the first contact, S.P. hoped it was an

accident and "moved [her] legs a little bit closer together," but Zhu touched the same area "a couple more times." (Tr. Vol. I at 140.) S.P. testified she did not yell or say anything to Zhu because she "kind of shut down about it." (*Id.*) During the face-down portion of the massage, Zhu also "grabbed each of [S.P.'s] shoulders one at a time and pulled [her] up off of the massage table[,] making the sheet drop back and exposing [her] breasts." (Tr. Vol. I at 141.) At one point, Zhu also "pulled [S.P.'s] leg kind of out at an angle * * * and that caused the sheet to come up[,] exposing [her] genitals." (Tr. Vol. I at 142.)

{¶ 7} Zhu then left the room and S.P. turned onto her back. S.P. only intended to have her arms massaged while she was lying on her back. However, when Zhu returned, he began massaging her upper thighs; while massaging this area, Zhu "rubbed his hand across - over [her] thigh and across [her] vagina several times." (Tr. Vol. I at 144.) This occurred when he massaged her right and left legs, approximately six to eight times in total. S.P. did not say anything to Zhu about touching her vagina but told him she wanted her arms massaged; Zhu moved to her head and began roughly massaging her temples. Near the end of the massage, Zhu briefly massaged S.P.'s arms.

{¶ 8} S.P. admitted that several times during the massage, Zhu asked her if the amount of pressure was okay, and she responded affirmatively. However, S.P. testified Zhu did not ask if the pressure was okay when touching her vagina. (Tr. Vol. I at 213.)

{¶ 9} S.P. testified that when the massage ended, she dressed and went to the reception area; she paid $80 for the massage, which cost in the "mid to upper 70s range" and told the receptionist to keep the change. (Tr. Vol. I at 146.) The receptionist asked how the massage was and S.P. answered it was "good." (Tr. Vol. I at 182.) S.P. did not say anything to the receptionist about Zhu's conduct because the receptionist was "dressed really provocatively" and S.P. thought perhaps "maybe [she] had gone to the type of massage parlor where that sort of behavior is expected and paid for." (Tr. Vol. I at 148.) S.P. went to the bathroom and wiped her genital area with a wet paper towel and then left the massage parlor.

{¶ 10} When S.P. got to her car, she began crying and texted her boyfriend. They had a phone conversation and he told her what had occurred was criminal. After discussing the incident with her boyfriend, S.P. called the Franklin County Sheriff's Department from the massage parlor parking lot. (Tr. Vol. I at 157.) A deputy came to the parking lot and

S.P. filled out a report.  S.P. testified she filed a report with the Franklin County Prosecutor's Office a week after the incident.

{¶ 11}  On cross-examination, S.P. admitted she had recently filed a civil lawsuit against Zhu and Touch Therapy Massage.   (Tr. Vol. I at 186, 208-09.)   On redirect examination, the state introduced a text message S.P. sent to a friend while she was completing the report with the deputy.  In that text, S.P. told her friend a "creep massage therapist kept touching my vagina during my massage."  (State's Ex. 2; Tr. Vol. I at 212.)

{¶ 12}  S.P.'s boyfriend testified about their phone conversation, in which S.P. told him Zhu had touched her vagina multiple times during the massage.   During that conversation, he told S.P. to call the police and report the incident.

{¶ 13}  Zhu's trial counsel called as a witness Franklin County Sheriff's Deputy Christopher Lee, who responded to S.P.'s call on December 31, 2019, and took her report. After taking S.P.'s report, Deputy Lee attempted to speak with Zhu but was unable to due to Zhu's limited English capability.  Deputy Lee testified he did not file any charges the day S.P. made the report.  He further testified that probable cause was the appropriate standard for filing a charge.  On cross-examination, Deputy Lee testified when he arrived S.P. was "visibly upset," crying, and shaking, and "reminded [him] of someone that had been through some sort of scare or trauma."  (Tr. Vol. II at 249.)

{¶ 14}  The manager of Touch Therapy Massage testified she had scheduled S.P.'s appointment and worked the front desk on December 31, 2019.  After S.P. completed the paperwork, the manager introduced S.P. to Zhu and explained his limited English capability.  The manager told S.P. that Zhu would understand if told that the massage was too hard or too soft and that he would periodically ask if the technique and pressure he used were okay.  She further testified she generally told clients that Zhu would occasionally climb up onto the table to apply more pressure when massaging the back.

{¶ 15}  The manager testified she did not hear any indications of distress during S.P.'s massage and would have heard any problems because the walls of the facility were "particularly thin."  (Tr. Vol. II at 256.)  After the session ended, she asked S.P. about the massage and S.P. did not complain or indicate anything inappropriate occurred.  The manager claimed S.P. paid for the massage with a credit card and personally tipped Zhu $10 in cash before leaving.  (Tr. Vol. II at 258, 273.)  She claimed no other clients had

complained about Zhu. The manager was also a licensed massage therapist and, on cross-examination, testified there were no massage techniques that would involve directly touching a client's genitals. She asserted that some techniques for massaging the gluteal muscles and hamstrings to treat lower back pain might involve contact near the genital area.

{¶ 16} Zhu testified, through an interpreter, that he had practiced massage for more than ten years in China and nine years since coming to the United States. He had worked at Touch Therapy Massage for more than three years, generally having three customers each day at the company's different locations.

{¶ 17} Regarding the events of December 31, 2019, Zhu testified S.P. had a painful expression before the massage, so he intended to be "extra cautious around her." (Tr. Vol. II at 283.) Based on the diagram S.P. completed, Zhu recommended starting by massaging her back. Zhu testified he massaged S.P.'s back and legs while she was lying face-down for approximately 45 minutes. Zhu claimed S.P. did not say anything to cause him to believe she was uncomfortable and did not ask him to stop the massage. He testified that when massaging S.P.'s thigh and hips, he used his elbow "to avoid any misconception." (Tr. Vol. II at 306.) Zhu denied touching S.P.'s vagina or near her vagina, stating he was "[n]ot even close, not even once." (Tr. Vol. II at 307.) Zhu claimed S.P. was lying about what occurred during the massage. He also denied leaning against the table during the massage, stating it would be unreasonable and "not very professional." (Tr. Vol. II at 293.) On cross-examination, Zhu admitted it would never be acceptable to touch an individual's vagina during a massage and that touching someone's vagina could be offensive.

{¶ 18} After Zhu's testimony, the attorneys made closing statements and the case was submitted to the jury. Following some deliberation, the jury advised the court they were unable to reach a unanimous agreement. The trial court gave the jury an *Allen* charge.[1] Because it was late on Friday, the trial court then asked the jurors whether they wanted to continue to deliberate or return the following Monday. The jurors elected to resume deliberations after the weekend. Before the jury resumed its deliberations the following

---

[1] The *Allen* charge arises from *Allen v. United States*, 164 U.S. 492 (1896).

Monday, at the state's request, the trial court gave the jury a *Howard* charge.[2]   After continued deliberations, the jury found Zhu guilty of sexual imposition as charged.

{¶ 19} Following a sentencing hearing, the trial court sentenced Zhu to 60 days in jail, with 57 days suspended, two years of community control, and a $500 fine.  The court designated Zhu as a Tier I sex offender, subject to a 15-year period of annual in-person verification.  Zhu timely appealed the trial court's judgment.

## II.  ASSIGNMENT(S) OF ERROR

{¶ 20} Zhu assigns the following as trial court error:

**ASSIGNMENT OF ERROR I** - TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL [PURSUANT TO] *STRICKLAND V. WASHINGTON*, 466 U.S. 668, 686, 104 S.CT. 2052 (1984) AND *STATE V. BRADLEY*, 42 OHIO ST.3D 136, 538 N.E.2D 373 (1989) BY FAILING TO REQUEST AN ACCIDENT OR MISTAKE OF FACT JURY INSTRUCTION.

**ASSIGNMENT OF ERROR II** - TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL PURSUANT TO *STRICKLAND V. WASHINGTON*, 466 U.S. 668, 686, 104 S.CT. 2052 (1984) AND *STATE V. BRADLEY*, 42 OHIO ST.3D 136, 538 N.E.2D 373 (1989) BY CALLING A WITNESS WHOSE CROSS[-]EXAMINATION WAS PREJUDICIAL TO DEFENDANT.

**ASSIGNMENT OF ERROR III** - TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL PURSUANT TO *STRICKLAND V. WASHINGTON*, 466 U.S. 668, 686, 104 S.CT. 2052 (1984) AND *STATE V. BRADLEY*, 42 OHIO ST.3D 136, 538 N.E.2D 373 (1989) BY INTRODUCING PREJUDICIAL EVIDENCE OF A SEPARATE CIVIL LEGAL PROCEEDING AGAINST THE DEFENDANT.

**ASSIGNMENT OF ERROR IV** - TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL PURSUANT TO *STRICKLAND V. WASHINGTON*, 466 U.S. 668, 686, 104 S.CT. 2052 (1984) AND *STATE V. BRADLEY*, 42 OHIO ST.3D 136, 538 N.E.2D 373 (1989) BY FAILING TO

---

[2] The *Howard* charge arises from *State v. Howard*, 42 Ohio St.3d 18 (1989).  In *Howard*, the Supreme Court of Ohio abandoned the traditional *Allen* charge and approved an alternate supplemental instruction for a deadlocked jury.  *Howard* at paragraphs one and two of the syllabus.  Appellant has not asserted the trial court erred by giving the *Allen* charge; because the court also gave the *Howard* charge before the jury resumed its deliberations, we need not reach that issue.

OBJECT TO OR CLARIFY THE STATE AND WITNESSES' USE OF THE TERM "VAGINA"[.]

**ASSIGNMENT OF ERROR V** - THE DEFENDANT'S CONVICTION IS BASED ON LEGALLY INSUFFICIENT EVIDENCE PURSUANT TO *STATE V. THOMPKINS*, 78 OHIO ST.3D 380, 1997-OHIO-52 AND *STATE V. JENKS*, 61 OHIO ST.3D 259, 574 N.E.2D 492 (1991).

**ASSIGNMENT OF ERROR VI** - THE DEFENDANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PURSUANT TO *STATE V. THOMPKINS*, 78 OHIO ST.3D 380, 1997-OHIO-52 AND *STATE V. APANOVITCH*, 33 OHIO ST.3D 19, 514 N.E.2D 394 (1987).

**ASSIGNMENT OF ERROR VII** - DUE TO THE CUMULATIVE ERRORS IN DEFENDANT'S TRIAL HE WAS DENIED DUE PROCESS PURSUANT TO *STATE V. DEMARCO*, 31 OHIO ST.3D 191, 509 N.E.2D 1256 (1987).

## III.   LEGAL ANALYSIS

{¶ 21} For clarity of analysis, we begin with Zhu's challenges to the sufficiency and weight of the evidence supporting his conviction. We will then turn to his various claims of ineffective assistance of trial counsel.

### A.     Sufficiency of the evidence

{¶ 22} Zhu argues in his fifth assignment of error that his conviction was based on insufficient evidence.

{¶ 23} "Sufficiency of the evidence is a legal standard that tests whether the evidence is legally adequate to support a verdict." *State v. Kurtz*, 10th Dist. No. 17AP-382, 2018-Ohio-3942, ¶ 15, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). "In determining whether the evidence is legally sufficient to support the jury verdict as a matter of law, '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Robinson*, 124 Ohio St.3d 76, 2009-Ohio-5937, ¶ 34, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), at paragraph two of the syllabus. When evaluating the sufficiency of the evidence, we "do not assess whether the prosecution's evidence is to be believed but whether, if believed, the evidence supports the conviction." *Kurtz* at ¶ 16. "[T]he testimony of one witness, if believed by the jury, is enough to support a conviction." *State v. Strong*, 10th Dist. No. 09AP-874, 2011-Ohio-1024, ¶ 42.

We will not reverse a verdict due to insufficient evidence "unless, after viewing the evidence in a light most favorable to the prosecution, it is apparent that reasonable minds could not reach the conclusion reached by the trier of fact." *State v. Patterson*, 10th Dist. No. 15AP-1117, 2016-Ohio-7130, ¶ 32.

{¶ 24} Zhu was convicted of violating R.C. 2907.06(A)(1), which provides in relevant part that "[n]o person shall have sexual contact with another, not the spouse of the offender * * * when * * * [t]he offender knows that the sexual contact is offensive to the other person * * * or is reckless in that regard." "Sexual contact" is defined as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).

{¶ 25} Zhu first claims there was no evidence he knew or acted recklessly regarding whether his contact with S.P. was offensive. "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). "A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature." R.C. 2901.22(C).

{¶ 26} On cross-examination, the prosecutor asked Zhu about touching an individual's vagina during a massage:

> Q. You have testified that you are an experienced masseuse, correct?
>
> A. Yes.
>
> Q. And you will agree it's never acceptable to touch someone's vagina during a massage, correct?
>
> A. Yes.
>
> Q. And we can also agree that touching someone's vagina could be offensive, correct?
>
> A. Yes.

(Tr. Vol. II at 318-19.) Zhu also testified that a male masseuse would generally use the elbow when massaging the muscles along the sides of the buttocks "in order to avoid any suspicion or impropriety." (Tr. Vol. II at 290.) Zhu claimed he used his elbow to massage

S.P.'s thigh and hips "to avoid any misconception."   (Tr. Vol. II at 306.)   However, S.P. testified the contact was an "open-handed, full touching" and she "could feel what seemed like all four of his fingers go all the way across." (Tr. Vol. I. at 139.) Construing this evidence in a light most favorable to the prosecution, a trier of fact could reasonably find Zhu touched S.P.'s genitals or pubic region.  The trier of fact could also reasonably find Zhu knew that touching S.P.'s genitals would be offensive or, through the positioning of his hands, acted recklessly as to whether it would be offensive.

{¶ 27} Zhu also asserts there was no evidence that any contact was for the purpose of sexual arousal.  A purpose of sexual arousal or gratification may be inferred "from the type, nature, and circumstances of the contact, among other relevant factors."  *State v. Barrie*, 10th Dist. No. 15AP-848, 2016-Ohio-5640, ¶ 18.  While Zhu concedes evidence of sexual arousal may be inferred, he argues S.P. denied hearing any sound, seeing any physical reaction, or feeling any "forceful grope or lingering touch" from Zhu that would suggest a purpose of sexual arousal.  (Appellant's Brief at 41.)  Zhu further argues the fact that the massage table was at his waist level and he may have made incidental contact with the table during the massage does not support an inference of sexual gratification. However, S.P.'s testimony did not suggest incidental contact with the massage table; instead, she testified she could feel Zhu "pressed up against [her]" while massaging her head and shoulders.  (Tr. Vol. I at 138.)  S.P. also felt Zhu touch her vagina multiple times, both while she was lying face-down and after she had turned onto her back.  Moreover, S.P. testified Zhu moved her body during the massage in ways that exposed her breasts and her genitals.  This evidence, if believed, was sufficient to support an inference that Zhu had a purpose of sexual arousal or gratification.

{¶ 28} Finally, Zhu also argues the evidence was insufficient to support the conviction because there was no independent corroborating evidence of sexual contact. The sexual imposition statue provides that no one shall be convicted of sexual imposition "solely upon the victim's testimony unsupported by other evidence."  R.C. 2907.06(B). "The corroborating evidence necessary to satisfy R.C. 2907.06(B) need not be independently sufficient to convict the accused, and it need not go to every essential element of the crime charged."  *State v. Economo*, 76 Ohio St.3d 56, 60 (1996).  "Slight

circumstances or evidence which tends to support the victim's testimony is satisfactory." *Id.*

{¶ 29} In *Economo*, a patient alleged her doctor made sexual contact with her during two office visits. *Id.* at 56. The Supreme Court found sufficient corroborating evidence to satisfy R.C. 2907.06(B) based on: (1) medical records showing a physician-patient relationship existed, (2) medical records showing the patient was treated by the physician on the date of the alleged second incident, (3) testimony from the patient's sister that the patient was scared and upset and asked her to come in the examination room so the physician would not touch her, and (4) testimony from the patient's sister that the patient was on the verge of crying when she left the examination room. *Id.* at 60. Similarly, the Eighth District Court of Appeals found sufficient corroborating evidence in a case involving a high school student's sexual contact with one of his classmates during class because: (1) the victim told a friend about the incident after it occurred, (2) the victim told a teacher the following day that she had been touched by another student in a private area, and (3) there was testimony that the victim was emotional and extremely upset. *In re J.W.*, 8th Dist. No. 109031, 2020-Ohio-4065, ¶ 21.

{¶ 30} Here there was sufficient corroborating evidence to satisfy the requirement of R.C. 2907. 06(B). Zhu and the massage parlor manager testified S.P. received a massage from Zhu on S.P. on December 31, 2019. S.P.'s boyfriend testified she sent him text messages and had a phone conversation with him about the incident while sitting in her car after leaving the massage parlor. The state also introduced a text message sent to another friend while completing the police report; in the text, S.P. stated her masseuse touched her vagina. The responding deputy testified S.P. was visibly upset and "reminded [him] of someone that had been through some sort of scare or trauma." (Tr. Vol. II at 249.) This evidence met the standard of "[s]light circumstances or evidence which tends to support the victim's testimony." *Economo* at 60.

{¶ 31} Based on our review of the evidence, considering it in a light most favorable to the prosecution, we conclude a rational trier of fact could have found all the essential elements of sexual imposition proven beyond a reasonable doubt. *See Robinson* at ¶ 34. Accordingly, we overrule Zhu's fifth assignment of error.

**B.        Manifest weight of the evidence**

{¶ 32} Zhu argues in his sixth assignment of error that the jury's verdict was against the manifest weight of the evidence.

{¶ 33} "While sufficiency of the evidence is a test of adequacy regarding whether the evidence is legally sufficient to support the verdict as a matter of law, the criminal manifest weight of the evidence standard addresses the evidence's effect of inducing belief." *State v. Cassell*, 10th Dist. No. 08AP-1093, 2010-Ohio-1881, ¶ 38.   This standard requires an appellate court to determine whether the state's evidence or the defendant's evidence was more persuasive. *Id.*   When evaluating whether a conviction is against the manifest weight of the evidence, we "must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether, in resolving any conflicts in the evidence, the jury clearly lost its way and thereby created such a manifest miscarriage of justice that the conviction must be reversed and a new trial must be ordered." *Id.* at ¶ 39.   We will only reverse a conviction on manifest weight grounds in the most exceptional case where the evidence weighs heavily against the conviction. *Id.* at ¶ 40.

{¶ 34} When evaluating the manifest weight of the evidence, we may consider the credibility of the witnesses. *State v. Cattledge*, 10th Dist. No. 10AP-105, 2010-Ohio-4953, ¶ 6.   "However, in conducting our review, we are guided by the presumption that the jury, or the trial court in a bench trial, 'is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.' " *Id.*, quoting *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984).   "Accordingly, we afford great deference to the jury's determination of witness credibility." *State v. Albert*, 10th Dist. No. 14AP-30, 2015-Ohio 249, ¶ 14.   "Mere disagreement over the credibility of witnesses is not a sufficient reason to reverse a judgment on manifest weight grounds." *State v. Harris*, 10th Dist. No. 13AP-770, 2014-Ohio-2501, ¶ 25.

{¶ 35} Zhu argues the verdict was against the manifest weight of the evidence because of potential confusion over the term "vagina."  As discussed more fully below, there is no evidence of any confusion about this term and Zhu's trial counsel clarified the term during voir dire.  Zhu also claims the jury lost its way by convicting him because S.P. never

communicated her discomfort and he had no way of knowing she was dissatisfied with the massage unless she told him. However, Zhu admitted that touching a client's vagina during a massage would be offensive; therefore, if the jury believed S.P.'s testimony about the touching, Zhu's own testimony served to establish the offensiveness of that action.

{¶ 36} Because the jury initially was unable to reach a verdict, Zhu argues it can be inferred the final verdict was motivated by sympathy for S.P. The trial court expressly instructed the jurors they "must not be influenced by any consideration of sympathy or prejudice." (Tr. Vol. II at 356.) A jury is presumed to follow the trial court's instructions. *State v. Shine-Johnson*, 10th Dist. No. 17AP-194, 2018-Ohio-3347, ¶ 45; *see also State v. Fox*, 133 Ohio St. 154, 160 (1938) ("A presumption always exists that the jury has followed the instructions of the court as to the law."). Zhu presents nothing more than speculation and fails to overcome the presumption that the jurors followed the trial court's instruction not to reach a verdict based on sympathy or prejudice.

{¶ 37} Given the nature of the evidence in this case, with S.P. testifying Zhu touched her inappropriately and Zhu claiming it did not happen, the jury was inevitably faced with a credibility determination. The verdict indicates the jury found S.P. more credible and we must afford "great deference" to that determination. *Albert* at ¶ 14. Based on our review of the evidence, we cannot find the jury clearly lost its way and created a manifest miscarriage of justice in finding Zhu guilty. *Cassell* at ¶ 39. Accordingly, we overrule Zhu's sixth assignment of error.

## C.      Ineffective assistance of counsel

{¶ 38} Zhu's first through fourth assignments of error all raise claims of ineffective assistance of trial counsel.[3] Each of these assignments is governed by the same general standard, but we will consider the specific merits of each claim individually.

### 1.      Standard for establishing ineffective assistance of counsel

{¶ 39} Zhu must satisfy a two-pronged test to demonstrate ineffective assistance of counsel. *State v Jackson*, 107 Ohio St.3d 53, 2005-Ohio-5981, ¶ 133, citing *Strickland v. Washington*, 466 U.S. 668 (1984). First, he must show that his counsel's performance was deficient because it "fell below an objective level of reasonable representation." *Id.* Second,

---

[3] Zhu was represented by two attorneys at trial, but for clarity of discussion we will use "counsel" as a singular noun.

he must show that his counsel's deficient performance prejudiced his defense so far as to deprive him of a fair trial. *Id.* The failure to show deficient performance or prejudice will defeat a claim of ineffective assistance of counsel. *State v. Lee*, 10th Dist. No. 17AP-908, 2018-Ohio-3957, ¶ 35.

{¶ 40} To establish deficient performance, Zhu must "show that counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment." *Id.* at ¶ 34. "Debatable trial tactics generally do not constitute ineffective assistance of counsel." *State v. Elmore*, 111 Ohio St.3d 515, 2006-Ohio-6207, ¶ 116. A claim of deficient performance "must overcome the strong presumption that counsel's performance was adequate or that counsel's actions might be considered sound trial strategy." *Lee* at ¶ 34.

{¶ 41} To establish prejudice due to the alleged deficient performance, Zhu must "prove there exists a reasonable probability that, but for counsel's errors, the result of the trial would have been different." *Id.* at ¶ 35. " 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, ¶ 82, quoting *Strickland* at 694.

### 2.    Failure to request jury instructions on accident or mistake of fact

{¶ 42} Zhu argues in his first assignment of error that his trial counsel was ineffective by failing to request jury instructions on accident or mistake of fact.

{¶ 43} Generally, "[t]rial courts have a responsibility to give all jury instructions that are relevant and necessary for the jury to properly weigh the evidence and perform its duty as the factfinder." *Shine-Johnson* at ¶ 25. "A party is entitled to the inclusion of its requested instruction *only* if it is a correct statement of the law applicable to the facts of the case." (Emphasis added.) *State v. Covington*, 10th Dist. No. 06AP-826, 2007-Ohio-5008, ¶ 8. "Jury instructions are proper if they correctly state the law as applied to the facts of the case, and if reasonable minds can properly reach the conclusion sought by the instructions." *Id.*

### a.    Jury instruction on accident

{¶ 44} "[A]ccident 'involves the denial of a culpable mental state and is tantamount to the defendant not committing an unlawful act.' " *State v. Juntunen*, 10th Dist. No. 09AP-1108, 2010-Ohio-5625, ¶ 14, quoting *State v. Barnd*, 85 Ohio App.3d 254, 260

(3d Dist.1993); *see also State v. Fears*, 86 Ohio St.3d 329, 340 (1999) ("The concept of accident is tantamount to a denial that the act was intentional."). The model jury instruction on accident provides, in relevant part, that the defendant "denies that he committed an unlawful act and says that the result was accidental." *Ohio Jury Instructions*, CR Section 421.01 (Rev. June 2021).

{¶ 45} Zhu asserts the evidence was sufficient to warrant an accident instruction, which would have permitted the jury "to consider whether the contact that was alleged was accidental and without an intent or purpose of sexual gratification." (Appellant's Brief at 22.) Zhu claims his trial counsel's failure to request an accident instruction prevented the jury from weighing the testimony in light of such an instruction.

{¶ 46} In *State v. Norman*, 10th Dist. No. 99AP-398 (Dec. 23, 1999), we considered whether trial counsel was ineffective by failing to request an accident instruction in a murder case. The defendant in *Norman* testified he pointed a gun at the victim to get him to stop choking another individual; the gun fired and the bullet struck the victim in the neck, killing him. At various points in his testimony, the defendant alternatively claimed he pulled the trigger to scare the victim but did not know the gun was loaded, that he did not intend to injure the victim but wanted to get him off the other individual, that he intended to injure the victim but not kill him, and that he was scared and thought deadly force was the only way to stop the victim. After noting that accident and self-defense or defense of another are generally inconsistent, we concluded the defendant's trial counsel made a strategic decision to request an instruction on defense of another, rather than accident, because of the defendant's inconsistent testimony. We concluded this strategic decision was not ineffective assistance by the defendant's trial counsel.

{¶ 47} In the present case, Zhu repeatedly testified he did not touch S.P.'s vagina:

> Q. Your hand was never near her vagina?
>
> A. No. In order – In order to avoid any misconception, I used my elbow to massage her thigh and groin – hips.
>
> The Interpreter: The interpreter made the error. Thigh and hip.
>
> * * *
>
> Q. You didn't accidentally touch her vagina? You didn't accidentally touch her vagina?

A. No, because when I was massaging her legs and her hips, she was covered under the sheet.

Q. Sir, once again, please just answer my question. So you didn't touch her vagina three times?

A. No, no.

Q. Not once?

A. No.

Q. Not once?

A. Yes.

Q. Not even close? Not even close?

A. Not even close, not even once.

* * *

Q. So you heard her say – testify that you touched her vagina 8 to 12 times, correct?

A. I didn't even touch her once. She was lying.

(Tr. Vol. II at 306-07, 310.) Zhu's repeated testimony that he did not touch S.P.'s vagina and his declaration that S.P. was lying about the incident were inconsistent with an accident defense, which would require persuading the jury that any contact with S.P.'s vagina was unintentional and incidental to the massage. Under these circumstances, like in *Norman*, it appears trial counsel made a strategic decision to pursue the defense most consistent with Zhu's testimony. It also appears Zhu's trial counsel made a strategic decision not to argue in the alternative—i.e., that no contact with S.P.'s vagina occurred but, if it did, any contact was accidental. We cannot conclude these strategic decisions "fell below an objective level of reasonable representation." *Jackson* at ¶ 133. Under these circumstances, Zhu's trial counsel did not provide ineffective assistance by failing to request a jury instruction on accident.

### b. Jury instruction on mistake of fact

{¶ 48} "Generally, mistake of fact is a defense if it negates a mental state required to establish an element of a crime, except that if the defendant would be guilty of a crime under facts as he believed them, then he may be convicted of that offense." *State v. Hubbard*, 10th Dist. No. 11AP-945, 2013-Ohio-2735, ¶ 64. "Mistake of fact is widely recognized as a defense to specific intent crimes such as theft since, when the defendant has an honest

purpose, such a purpose provides an excuse for an act that would otherwise be deemed criminal." *Id.*

{¶ 49} Zhu claims a mistake of fact instruction would have related to the element of knowledge, arguing there was a lack of evidence he knew incidental contact with S.P.'s pubic region was offensive to her. Zhu argues S.P. did not tell him before the massage that she did not want her thighs massaged and did not stop or correct him during the massage. He asserts the jury could have inferred he had a good faith but mistaken belief he was massaging the areas S.P. wanted to have addressed and therefore his trial counsel was ineffective by failing to request a mistake of fact instruction.

{¶ 50} Again, we note Zhu repeatedly denied making any contact with S.P.'s vagina. He did not allege that touching S.P.'s genitals or pubic region was a necessary, or even an incidental, part of the massage he performed. Moreover, Zhu expressly admitted on cross-examination that such contact, if it occurred, would be offensive. Zhu's testimony does not support a claim that he had an "honest purpose" for touching S.P.'s pubic region that would "provide[ ] an excuse for an act that would otherwise be deemed criminal." *Hubbard* at ¶ 64. It appears Zhu's trial counsel made a strategic decision to focus on Zhu's denial of touching S.P.'s vagina, rather than pursue a mistake of fact instruction that would seek to provide an excuse for such touching. We cannot conclude this strategic decision "fell below an objective level of reasonable representation." *Jackson* at ¶ 133. Zhu's trial counsel did not provide ineffective assistance by failing to request a mistake of fact instruction.

{¶ 51} Because we find Zhu's trial counsel did not perform deficiently by failing to request jury instructions on accident or mistake of fact, we cannot find ineffective assistance of counsel on these grounds. Accordingly, we overrule Zhu's first assignment of error.

### 3. Calling Deputy Lee as a witness at trial

{¶ 52} Zhu's second assignment of error argues his trial counsel provided ineffective assistance by calling Deputy Lee to testify because he gave harmful testimony on cross-examination.

{¶ 53} "Generally, counsel's decision whether to call a witness falls within the rubric of trial strategy and will not be second-guessed by a reviewing court." *State v. Treesh*, 90 Ohio St.3d 460, 490 (2001). "Trial tactics and strategies, even 'debatable trial tactics,' do

not constitute a denial of effective assistance of counsel." *State v. Thompkins*, 10th Dist. No. 06AP-310, 2006-Ohio-6148, ¶ 9, citing *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, ¶ 146.

{¶ 54} *Thompkins* involved charges of attempted murder and felonious assault; the victim, who had been in a relationship with Thompkins but was in the process of leaving him, claimed Thompkins forced her into their home at knifepoint and then choked her. *Id.* at ¶ 3. She fled the home and ran to a neighbor's porch; Thompkins followed, ultimately catching the victim and throwing her to the ground, then stabbing her multiple times. *Id.* Thompkins's trial counsel called only one witness, the neighbor to whose porch the victim had fled. *Id.* at ¶ 4. On appeal, Thompkins argued this was ineffective assistance, claiming he had a chance of acquittal before the neighbor testified because the victim's credibility was questionable. *Id.* at ¶ 7. Thompkins conceded his trial counsel appeared to seek testimony that the neighbor did not see a weapon during the altercation but argued that point was irrelevant and would not have helped his defense. *Id.*

{¶ 55} Based on its review of the record, this court concluded Thompkins's trial counsel may have been trying to use the neighbor's testimony to negate the use of a deadly weapon element of the felonious assault charges and the intent to kill element of the attempted murder charge. *Id.* at ¶ 8. We concluded that "although the decision whether to call [the neighbor] for such a limited purpose while risking damage resulting from the entirety of his testimony could be classified as a debatable trial tactic with a debatable chance of success, without putting forth any other testimony, appellant had nothing to rebut the victim's clear testimony." *Id.* at ¶ 9. Under those circumstances, the court did not find trial counsel's strategy to be unreasonable. *Id.*

{¶ 56} Similarly, in a case involving sexual abuse charges against multiple child victims, this court found it was not ineffective assistance for defense counsel to call one of the alleged victims as a witness, even though she ultimately testified that the defendant had abused her. *State v. Douthat*, 10th Dist. No. 09AP-870, 2010-Ohio-2225, ¶ 18. The victim had previously denied being sexually abused in interviews with a children's services investigator and a police detective, and never talked to anyone but her twin sister about the abuse. *Id.* at ¶ 18. This court reasoned defense counsel "could have called [the victim] as a witness believing that she would continue to deny [Douthat] ever sexually abused her." *Id.*

We concluded calling the victim as a witness was not ineffective assistance "in light of the extremely wide latitude legal counselors are given in the selection of witnesses, because [Douthat's] trial counsel had at least a plausible reason for calling [her]." *Id.*

{¶ 57} Zhu acknowledges his trial counsel likely called Deputy Lee as a witness "to establish that charges were not immediately filed" against him. (Appellant's Brief at 29.) He argues Deputy Lee's direct testimony led to a "confusing and unhelpful discussion of probable cause." *Id.* Zhu claims Deputy Lee's cross-examination testimony that S.P. was visibly upset, crying, shaking, and reminded him of someone who had experienced a trauma was directly harmful to Zhu's defense. Zhu argues it was not a reasonable professional decision to call Deputy Lee as a witness because of this harmful testimony.

{¶ 58} Like *Thompkins* and *Douthat*, the decision to call Deputy Lee as a witness falls within the realm of a debatable trial tactic. It was clearly an attempt to cast doubt on S.P.'s claims by establishing that Deputy Lee found insufficient evidence to charge Zhu with any criminal offense. While the benefit from Deputy Lee's direct testimony ultimately may have been outweighed by his cross-examination testimony, "an unsuccessful strategy does not render counsel's assistance constitutionally ineffective." *State v. Hunt*, 10th Dist. No. 12AP-1037, 2013-Ohio-5326, ¶ 117. Here, Zhu's trial counsel had a plausible reason for presenting Deputy Lee as a witness. *See Douthat* at ¶ 18. Therefore, we cannot conclude Zhu's counsel performed deficiently by calling Deputy Lee to testify at trial.

{¶ 59} Accordingly, we overrule Zhu's second assignment of error.

### 4. Introducing evidence of the civil proceeding against Zhu and Touch Therapy Massage

{¶ 60} Zhu argues in his third assignment of error that his trial counsel provided ineffective assistance by asking S.P. on cross-examination about a separate civil proceeding against Zhu.

{¶ 61} "Decisions regarding cross-examination are within the trial counsel's discretion and generally do not form the basis for a claim of ineffective assistance of counsel." *Hunt* at ¶ 116. We have held "[t]he extent and scope of cross-examination clearly falls within the ambit of trial strategy." *Id.* Therefore, " 'an appellate court reviewing an ineffective assistance of counsel claim must not scrutinize trial counsel's strategic decision to engage, or not engage, in a particular line of questioning on cross-examination.' " *State*

*v. Dorsey*, 10th Dist. No. 04AP-737, 2005-Ohio-2334, ¶ 22, quoting *In re Brooks*, 10th Dist. No. 04AP-164, 2004-Ohio-3887, ¶ 40.

{¶ 62} On cross-examination, Zhu's trial counsel asked S.P. whether she was in the process of filing a lawsuit against Zhu or Touch Therapy Massage, and whether she was subject to an open case with the Internal Revenue Service ("IRS") regarding unpaid taxes. S.P. admitted to having hired an attorney and filing a civil claim against Zhu and Touch Therapy Massage but denied having any outstanding IRS tax liens. On redirect examination, the state then introduced the text message S.P. sent to a friend while she was completing the police report. In that text, S.P. told her friend that a "creep massage therapist kept touching [her] vagina during [her] massage." (State's Ex. 2; Tr. Vol. I at 212.) The trial court denied Zhu's objection to the text message, in part under the exception to the hearsay exclusion for prior consistent statements offered to rebut an express or implied charge of improper motive.

{¶ 63} Zhu argues the questions about a civil claim against him and pending tax debts harmed his defense by opening the door for evidence rebutting the implied improper motive. This allowed the state to introduce S.P.'s text message to her friend, thereby bolstering her testimony. Zhu claims his trial counsel was aware of the risk of this evidence prior to trial and had sought to exclude it.

{¶ 64} As explained above, we generally will not scrutinize a particular line of cross-examination because the scope of cross-examination is within the realm of trial strategy. Here, it is clear Zhu's trial counsel sought to discredit S.P.'s testimony by suggesting she had a financial motive to accuse Zhu of improper touching. This appears to have been a strategic decision guided by Zhu's claim that S.P. was lying about the incident—it offered an explanation for *why* S.P. would lie. Although this strategy was unsuccessful and involved a risk of allowing the state to bolster S.P.'s testimony, we cannot conclude it was deficient performance. *See Hunt* at ¶ 117.

{¶ 65} Accordingly, we overrule Zhu's third assignment of error.

### 5.    Failing to clarify the term "vagina"

{¶ 66} In his fourth assignment of error, Zhu argues his trial counsel provided ineffective assistance by failing to clarify the term "vagina," thereby potentially allowing the jury to be misled. Zhu asserts that "[m]edically, the vagina is the canal between the hymen

and the cervix," but admits that colloquially the term may be used to refer to the external genitalia. (Appellant's Brief at 36-37.) He claims his trial counsel failed to clarify which parts of the genitals or pubic region S.P. meant when she used the word vagina. Thus, Zhu argues, his trial counsel failed to ensure that the jury understood what S.P. and Zhu were referring to when they used the term vagina.

{¶ 67} The record belies Zhu's claim, however. Although Zhu's trial counsel did not clarify the term during trial, it was clarified during voir dire when questioning a potential juror who was also a registered nurse. After discussing the medical distinction between the vagina and the vulva and other parts of the external genitals, Zhu's counsel advised the potential jurors "what we're talking about is going to be the external organ." (Tr. Vol. I. at 90.) Having laid this foundation during voir dire, attempting to further clarify the term during trial, such as asking S.P. to describe in precise detail exactly what part of her genitals she claimed Zhu touched, could have been detrimental to Zhu's defense. To the extent Zhu suggests he may have been confused by the term, particularly considering his limited English, there is nothing in the record indicating Zhu misunderstood the term or failed to appreciate the distinction between the internal and external genitals when testifying. Zhu fails to overcome the strong presumption that his trial counsel's performance was adequate when choosing not to clarify the term vagina in greater detail during trial. *See Lee* at ¶ 34. Therefore, we cannot conclude his counsel performed deficiently.

{¶ 68} Accordingly, we overrule Zhu's fourth assignment of error.

**D.     Cumulative error**

{¶ 69} Finally, we turn to Zhu's seventh assignment of error, in which he asserts that the cumulative effect of his trial counsel's ineffective assistance requires reversal of his conviction.

{¶ 70} Under the doctrine of cumulative error, "a judgment may be reversed where the cumulative effect of errors deprives a defendant of his constitutional rights, even though the errors individually do not rise to the level of prejudicial error." *State v. Johnson*, 10th Dist. No. 10AP-137, 2010-Ohio-5440, ¶ 34, citing *State v. Garner*, 74 Ohio St.3d 49, 64 (1995).

{¶ 71} As explained above, we find no merit to any of Zhu's claims of ineffective assistance of counsel. "[W]hen none of [an appellant's] individual claims of ineffective

assistance of counsel have merit, cumulative error cannot be established simply by joining those meritless claims together." *State v. Graham*, 164 Ohio St.3d 187, 2020-Ohio-6700, ¶ 170; *see also Columbus v. Beasley*, 10th Dist. No. 17AP-629, 2019-Ohio-719, ¶ 80 ("[N]one of appellant's individual claims of ineffective assistance of counsel has merit. Appellant cannot establish he is entitled to relief simply by combining those unsuccessful claims together."). Because none of Zhu's ineffective assistance of counsel claims have merit, he cannot demonstrate cumulative error.

**{¶ 72}** Accordingly, we overrule Zhu's seventh assignment of error.

## IV.    CONCLUSION

**{¶ 73}** For the foregoing reasons, we overrule Zhu's seven assignments of error and affirm the judgment of the Franklin County Municipal Court.

*Judgment affirmed.*

JAMISON and NELSON, JJ., concur.

NELSON, J., retired, of the Tenth Appellate District, assigned
to active duty under the authority of the Ohio Constitution,
Article IV, Section 6(C).

_____