DECISION
{¶ 1} Defendant-appellant, Maurice H. Addison, was indicted on one count of receiving stolen property, one count of aggravated robbery, two counts of robbery, two counts of kidnapping, two counts of abduction and carrying a concealed weapon. After a bench trial, appellant was found guilty of all nine counts and sentenced. Appellant filed a notice of appeal and raises the following assignment of error:
Appellant was denied a fair trial as the result of ineffective assistance of trial counsel.
 {¶ 2} At trial, Lisa Coey testified that, on December 13, 2001, she was working as a cashier at the Speedway gas station at Main Street and Brice Road. At approximately 4:00 a.m., she was counting cigarettes when a black male entered wearing a grayish-colored hooded jacket and a black mesh do-rag over his face. The individual had a gun and wanted money, and a carton of Newport cigarettes. After she removed money from two registers and gave him the cigarettes, the individual ran out of the store.
 {¶ 3} James Wolman, Lisa Coey's boyfriend at the time, was also in the store. He testified he was standing at the magazine rack when the individual entered and demanded money and cigarettes. After the individual ran north on Brice Road, Wolman saw a police cruiser and ran outside and waved him over. The police officer asked him if he had been robbed and if the individual was wearing a gray sweatshirt.
 {¶ 4} Matthew Smith, a Columbus Police Detective, testified that he was driving south on Brice Road and noticed an individual running northbound with a gray jacket or sweatshirt pulled very tightly over his face and holding something against his body or underneath his jacket. Smith thought it was out of the ordinary, so he slowed his vehicle down and shined his spotlight on the individual. As soon as the headlights illuminated the individual, he looked up, immediately stopped running and stuck his hands in his pockets. Smith was able to get a good look at him. As soon as he was behind the vehicle, the individual began running again. Smith went to the Speedway because someone was waving at him and he asked if the store had just been robbed, and if the individual was wearing a gray sweatshirt. Smith then went into the Bricewood apartment complex because that was the likely location of the individual he had seen running. Smith exited his vehicle and saw appellant begin to run. After chasing him approximately 200-300 yards, Smith tackled him. Another officer helped to handcuff him. The officers removed money from appellant's front pocket, a revolver and a carton of Newport cigarettes. The officers also found more money and a black skull cap nearby. Smith testified that he was 100 percent sure that appellant was the same person he initially saw running north on Brice Road.
 {¶ 5} Jason Lenning, a Reynoldsburg Police Officer, testified that, while he was photographing appellant at the police station, appellant complained that his stomach was hurting. When Lenning asked appellant why, appellant responded that it was hurting from something that he did wrong and knew that it was wrong. Then appellant asked Lenning how long a sentence one could receive for armed robbery.
 {¶ 6} In order to demonstrate that his counsel's representation was ineffective, appellant must demonstrate that: (1) counsel's performance was deficient; and (2) this deficient performance prejudiced the defense. Strickland v. Washington
(1984), 466 U.S. 668, 687. "A defendant does not state a claim for ineffective assistance of counsel unless his attorney acted unreasonably given the facts of the case, and the unreasonable conduct was prejudicial to the defense." State v. Mills (1992),62 Ohio St.3d 357, 370, certiorari denied, Mills v. Ohio
(1992), 505 U.S. 1227. Counsel need not raise meritless issues.State v. Hill (1996), 75 Ohio St.3d 195.
 {¶ 7} Appellant contends that both of his trial attorneys were prejudicially ineffective. His first attorney permitted appellant to discuss his remorse on the record during his plea hearing. At the hearing, appellant stated the following:
The Defendant: I — Just, Before I Entered anything, I just wanted to bring to the court's attention that I do show remorse for The witnesses. and I am sorry that — I am sorry.
* * *
I Know I'm wrong, but at the same time, I fear for my life and my family's life.
* * *
It only took me two minutes to understand the crime that I did, that I was wrong. six Years is a long time.
(Aug./Nov. 2002 Tr. at 2-3.)
 {¶ 8} At a second hearing in November concerning a psychological evaluation of appellant, the parties stipulated that appellant was competent to stand trial and to assist in his own defense. Appellant again wanted to address the court and stated, as follows:
* * * I Just want to address the court in that report. I mean I understand the seriousness of the case and what was going on during that time i was under[.]
(Aug./Nov. 2002 Tr. at 7.)
 {¶ 9} At that time, appellant's counsel interrupted him and asked him to stop. Appellant then asked to have his attorney removed. The court responded, as follows:
First, maurice, first of all, if you stand here and start talking about what happened and your version of the story, you have an absolute right not to testify against yourself, and no one can make you do that.
If we have a trial, if you start saying up here, you start telling the court your side of the story, it opens you up to the point where the prosecutor can cross-examine you because you would have waived or given up that right not to testify.
Also of concern is that conversations between you and your attorney — those are privileged, absolutely privileged. I could never make your attorney or you tell me what you two talked about. but if you start volunteering that again, that's where you're sort of voluntarily giving up that special privilege that you have.
* * *
[The Defendant:] I know that what happened —
Mr. Essex: don't. maurice, don't. you are just providing evidence against yourself if you talk about anything that happened.
Don't talk about what happened, okay?
The defendant: I'm like this. we feel if it's going to be evidence, I feel I want help. I understand what was going on and what happened at the time. I will admit I was using drugs.
Mr. Essex: Maurice.
The Court: Don't say any more, please.
Mr. Essex: Maurice, at this point, you can say whatever you want to, but I'm just telling you, it's strongly against your interest to say anything about anything about [SIC] what happened at the time of the offense. you can tell the judge anything else you want to, maurice. but don't talk about what happened at the time of the offense, okay?
(Aug./Nov. 2002 Tr. at 8-11.)
 {¶ 10} Appellant contends that his statements were, in essence, a confession and that he should not have been permitted to make such statements on the record. Evid.R. 410(A)(5) provides that any statement made in the course of plea discussions involving counsel which do not result in a plea of guilty are not admissible in any proceeding against the defendant. The purpose of the August hearing was for appellant to make a plea and there was much discussion over the possible sentence under the proposed plea. None of these statements were used at trial and, in a bench trial, a trial court is presumed to have considered only the relevant, material and competent evidence. State v. Bays
(1999), 87 Ohio St.3d 15, 28. Thus, appellant has not demonstrated any prejudice from his statements.
 {¶ 11} The trial court permitted the originally-assigned counsel to withdraw and new counsel was appointed. Appellant contends this counsel was also ineffective because he failed to make an effective opening statement, permitted appellant to waive a jury trial or failed to attempt to have the judge recuse herself.
 {¶ 12} When reviewing trial strategy, we must afford deference to counsel's decisions. Questionable trial tactics and strategies generally do not constitute ineffective assistance of counsel. State v. Clayton (1980), 62 Ohio St.2d 45, 48-49. Appellant's counsel did make an opening statement, although very brief. Appellant's counsel stated as follows:
MR. THOMAS: Thank you, Your Honor. If it please the Court, I will be very brief. Normally, under these circumstances I make a long opening statement telling the members of the jury, who are lay persons, where I think the State would go with their evidence.
In this case, if it please the Court, I won't do that because it would be the Court trying the case. So the Court knows what I am about to say, just as what Mr. Stead said, is not evidence, so I won't even present those arguments to the Court.
I will say, Your Honor, we are ready for the State to do their job in terms of what they have to do as far [as] Maurice is concerned. Maurice will put up the defense that he feels is necessary. Thank you.
(June 2003 Tr. at 10-11.)
 {¶ 13} It was counsel's tactical choice to avoid arguing the facts which were not evidence since the trier of fact was the trial judge rather than a jury. The decision not to make an opening statement is a tactical decision that will not ordinarily rise to the level of ineffective assistance of counsel. State v.Williams (1991), 74 Ohio App.3d 686, 700. Similarly, the decision to give a short opening statement is a tactical decision. Further, appellant has failed to demonstrate any prejudice by this short opening statement.
 {¶ 14} Appellant contends that his trial counsel was ineffective because he should have prevented appellant from waiving a jury trial when appellant had earlier, in essence, made a confession to the trier of fact. The record reflects that counsel explained appellant's trial alternatives. The trial court then explained in detail the procedures and differences between a jury trial and a bench trial, and questioned appellant's decision. It is difficult to determine what else appellant believes counsel should have done since the final decision belonged to appellant alone.
 {¶ 15} Appellant has failed to demonstrate prejudice from this decision. Underlying appellant's argument is his conclusion that the trial judge was biased because appellant had made prior statements on the record; however, a judge is presumed to be unbiased and unprejudiced in the matters over which he presides.In re Disqualification of Olivito (1994), 74 Ohio St.3d 1261,1263. "The term `bias or prejudice' `implies a hostile feeling or spirit of ill-will or undue friendship or favoritism toward one of the litigants or his attorney, with the formation of a fixed anticipatory judgment on the part of the judge, as contradistinguished from an open state of mind which will be governed by the law and the facts.'" In re Disqualification ofO'Neill, 100 Ohio St.3d 1232, 2002-Ohio-7479, at ¶ 14, quotingState ex rel. Pratt v. Weygandt (1956), 164 Ohio St. 463, 469.
 {¶ 16} Appellant also contends that trial counsel should have attempted to have the trial judge recuse herself; however, as stated previously, in a bench trial, a trial judge is presumed to have considered only relevant evidence. Bays. A trial judge need not recuse himself merely because he acquired knowledge of the facts during a prior proceeding. State v. D'Ambrosio
(1993), 67 Ohio St.3d 185, 188. "`[W]hat a judge learns in his judicial capacity — whether by way of guilty pleas of codefendants or alleged coconspirators, or by way of pretrial proceedings, or both — is a proper basis for judicial observations, and the use of such information is not the kind of matter that results in disqualification.'" D'Ambrosio, citingUnited States v. Bernstein (C.A.2, 1976), 533 F.2d 775, 785.
 {¶ 17} Finally, appellant has not demonstrated that the outcome of the trial would have been different with a different judge or a jury. Coey and Wolman testified that a black male, wearing a grayish-colored hooded jacket and a black mesh do-rag over his face, had a gun, entered the gas station, and demanded money and a carton of Newport cigarettes. Smith testified that he noticed appellant because of his unusual behavior in running with a gray jacket or sweatshirt pulled over his face very tightly and holding something against his body or underneath his jacket. After chasing appellant approximately 200-300 yards, Smith tackled him and the officers removed money from appellant's front pocket, a revolver and a carton of Newport cigarettes. The officers also found more money and a black skull cap nearby. Smith testified that he was 100 percent sure that appellant was the same person he initially saw running north on Brice Road. The comments made by appellant to Officer Lenning added to the evidence of guilt. State's Exhibit 1 was a letter which the parties stipulated was written by appellant. In the letter, appellant asks his friend for a favor and, if needed, to testify at his trial explaining what should be said for his alibi. Given all the evidence, appellant has not demonstrated that his attorneys' actions caused any prejudice to him. Appellant's assignment of error is not well-taken.
 {¶ 18} For the foregoing reasons, appellant's assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
Brown and Sadler, JJ., concur.