[Cite as *State v. Langille*, 2025-Ohio-5482.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 24AP-253 |
| | | (C.P.C. No. 21CR-4579) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Curtis B. Langille, | : | |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on December 9, 2025

**On brief:** *Shayla D. Favor*, Prosecuting Attorney, and *Paula M. Sawyers*, for appellee. **Argued:** *Paula M. Sawyers*.

**On brief:** *Reinhart Law Office*, and *Harry R. Reinhart*, for appellant. **Argued:** *Harry R. Reinhart*.

APPEAL from the Franklin County Court of Common Pleas

DINGUS, J.

{¶ 1}   Defendant-appellant, Curtis B. Langille, appeals the judgment and conviction of the Franklin County Court of Common Pleas, pursuant to jury verdicts finding him guilty of four counts of rape of a person less than ten years old and two counts of gross sexual imposition.  For the following reasons, we affirm.

## I.  FACTS AND PROCEDURAL HISTORY

{¶ 2}   In the summer of 2021, Langille began a relationship with co-defendant Carol Schneider.  Shortly thereafter, Schneider and her seven-year-old daughter, A.B., moved into a house with Langille.  In October 2021, Schneider took A.B. to Nationwide Children's Hospital ("NCH") after she was informed that Langille was bragging to co-workers that he and A.B. were taking bubble baths together.

{¶ 3} A forensic interview was conducted at NCH, during which A.B. disclosed that she was sexually abused by both Schneider and Langille. The medical staff informed the Franklin County Sheriff's Office ("FCSO") about the allegations, and a detective spoke with Schneider at NCH. Schneider was then transported to FCSO to be interviewed and was subsequently placed under arrest.

{¶ 4} Langille, an over-the-road truck driver, was arrested a few days later when he returned home. He admitted that he had taken a bath and a shower with A.B. in a Cincinnati hotel where Schneider was present. Law enforcement conducted a forensic download of cellphones belonging to Schneider and Langille. They discovered messages evidencing Langille's sexual desire for both Schneider and A.B. and photographs of Langille taking a bubble bath with A.B.

{¶ 5} On November 2, 2021, Schneider and Langille were both indicted on four counts of rape and two counts of gross sexual imposition during a course of conduct between October 7, 2020 and October 6, 2021. On December 3, 2021, Langille's first trial counsel filed a request for discovery and for a bill of particulars, seeking specific information about the charges in the indictment. On December 22, 2021, the plaintiff-appellee, State of Ohio, provided discovery and filed a bill of particulars that, like the indictment, stated that the alleged offenses occurred between October 7, 2020 and October 6, 2021.

{¶ 6} Langille later engaged new counsel, who filed another request for discovery and for a bill of particulars. In response, the state provided discovery and a bill of particulars identical to the one provided to Langille's first counsel. In January 2023, the trial court appointed new trial counsel, who requested discovery but not a bill of particulars. The state provided discovery to Langille's third trial counsel in February 2023.

{¶ 7} On May 31, 2023, Schneider entered a guilty plea to one count of rape, two counts of attempted rape, and one count of gross sexual imposition, and was sentenced to a jointly recommended sentence of 22 to 26 years in prison. The state agreed not to object to judicial release if Schneider continued to cooperate in the state's case against Langille.

{¶ 8} Langille's jury trial began on January 23, 2024. Langille filed a motion to suppress the testimony of Dr. Joy Miceli, a child sex abuse expert, and a motion in limine to restrict all victim statements, including the forensic interview, from the jury until

admitted into evidence. The trial court conducted hearings and denied both motions prior to trial.

{¶ 9} At trial, Schneider testified she met Langille in August 2021 while living in Cincinnati and that she and A.B. moved to Columbus to live with Langille in September 2021. Schneider stated that they stayed in hotels a few times before moving, and that Langille first touched A.B. inappropriately in a hotel in Cincinnati.

{¶ 10} Schneider testified that Langille continued to abuse A.B. in hotels and later when they moved into a house. She testified that on multiple occasions she was present when Langille sexually abused A.B. She also took pictures of Langille and A.B. taking a bubble bath in a hotel. Schneider admitted on cross-examination that she had not reported any of the conduct to law enforcement.

{¶ 11} Schneider testified that she was serving a 22-year sentence for the rape of her daughter and that she had not been promised anything from the state. In both its opening statement and closing argument, the state claimed that Schneider received no consideration in exchange for her testimony.

{¶ 12} The photographs and sexually suggestive messages were admitted as evidence, and the forensic interview was played for the jury. The forensic interviewer and the sexual assault nurse examiner testified as to their direct engagement with A.B., and Dr. Miceli offered expert testimony on child sex abuse. Hotel representatives testified and produced receipts of Langille's stays.

{¶ 13} The jury found Langille guilty of four counts of rape of a person less than ten years of age and of two counts of gross sexual imposition. The trial court imposed a sentence of life in prison without parole, three sentences of 15-years-to-life, and two sentences of three years, all to be served concurrently with each other. Langille was also ordered to register as a Tier III sexual offender.

{¶ 14} Langille now brings the instant appeal.

## II. ASSIGNMENTS OF ERROR

{¶ 15} Langille assigns the following four assignment of error for our review:

> [I.] The Appellant was denied due process and a fair trial when the State repeatedly elicited testimony that the co-defendant was sentenced to twenty-two years when, in fact, the co-defendant reached a plea bargain where the State agreed it

would not object to judicial release if the co-defendant testified against appellant.

[II.] The Appellant was denied due process and a fair trial as guaranteed by the state and federal constitutions when the trial court failed to inform the jury of the plea deal Carol Schneider received.

[III.] Appellant was denied the effective assistance of counsel guaranteed by the federal and state constitutions when counsel:
> a. failed to elicit testimony about the co-defendant's plea bargain and reduction in sentence she received for testifying against appellant;
> b. failed to move to suppress evidence that was clearly more prejudicial than probative;
> c. failed to litigate a meaningful bill of particulars.

[IV.] The State's failure to provide a Bill of Particulars with a more narrowed time frame deprived the Appellant of due process and a fair trial as guaranteed by the State and Federal Constitutions.

## III. LEGAL ANALYSIS

{¶ 16} Because Langille's first and second assignments of error are related, we will consider them together. Langille argued that the failure to disclose a favorable plea agreement resulted in testimony that was false and denied him due process and a fair trial.

{¶ 17} The state must notify the defense of any evidence that could exculpate a defendant, including any evidence which solely relates to the credibility of a prosecution witness. *Giglio v. United States*, 405 U.S. 150, 154 (1972). Included, among the favorable evidence the state is required to disclose is information relating to the reliability of prosecution witnesses, including any agreements or understandings between a witness and the state. *Id*. at 154-155. The state must disclose any type of favor or consideration promised by a prosecutor in exchange for a witness to testify because of its potential impact on the witness's credibility. *State v. Beckett*, 2000 Ohio App. LEXIS 732, *26 (6th Dist. Mar. 3, 2000).

{¶ 18} "A conviction knowingly 'obtained through use of false evidence' violates the Fourteenth Amendment's Due Process Clause." *Glossip v. Oklahoma*, 604 U.S. 226, 246 (2025), quoting *Napue v. Illinois*, 360 U.S. 264, 269 (1959). "The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it

appears." *Napue* at 269. The knowing use of perjured testimony is considered to be material "unless failure to disclose it would be harmless beyond a reasonable doubt." *United States v. Bagley*, 473 U.S. 667, 680 (1985). "[A] new trial is warranted so long as the false testimony 'may have had an effect on the outcome of the trial,' that is, if it ' "in any reasonable likelihood [could] have affected the judgment of the jury." ' " (Internal citation omitted.) *Glossip* at 246, quoting Napue at 272; *Giglio* at 154, quoting *Napue* at 272. The burden is on the prosecution, not defense counsel, " 'to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.' " (Further quotation marks deleted and citation omitted.) *Glossip* at 246, quoting *Bagley* at 680, fn. 9.

{¶ 19} Here, Schneider's plea agreement did not provide for a direct reduction in her sentence, but it did contain a promise from the state that it would not object to judicial release, expressly conditioned on Schneider's promise to testify against Langille. We find that this exchange of promises is the type of consideration requiring disclosure by the state under *Napue*. Just as in that case, here, "[h]ad the jury been apprised of the true facts . . . it might well have concluded that [Schneider] had fabricated testimony in order to curry the favor" of the prosecution in her own case. *Napue* at 270. Schneider falsely claimed that she was not promised anything in exchange for her testimony, and the state's knowing use of that false testimony would therefore require a new trial unless its use was harmless beyond a reasonable doubt. *See Bagley* at 680; *Glossip* at 246.

{¶ 20} In determining whether an error is harmless, "a reviewing court must examine an array of factors, including the importance of the witness's testimony . . ., the cumulative nature of the testimony, the presence or absence of corroborating or contradictory evidence, . . . and the overall strength of the prosecution's case." *State v. Jones*, 2008-Ohio-3565, ¶ 14 (10th Dist.), citing *State v. Lukens*, 66 Ohio App.3d 794, 805-806 (10th Dist. 1990), citing *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986). The improper use of testimony at trial is harmless if " 'the probable impact' of the statements 'on the minds of an average jury' [is] negligible." *State v. McKelton*, 2016-Ohio-5735, ¶ 192, quoting *Harrington v. California*, 395 U.S. 250, 254 (1969). Such evidence generally has a negligible effect if the remaining evidence provides overwhelming proof of the defendant's guilt. *State v. Morris*, 2014-Ohio-5052, ¶ 32.

{¶ 21} *Glossip* provides an example of perjured testimony being plainly prejudicial. Glossip was convicted and sentenced to death for paying Justin Sneed to murder Glossip's boss. *Glossip* at 231. Sneed was the star witness at Glossip's first and second trial, and the state portrayed Sneed as having "no propensity to violence except at Glossip's direction." *Id*. at 236. The state did not disclose that Sneed took lithium as prescribed by a psychiatrist for bipolar disorder, a condition which, combined with Sneed's methamphetamine use, could cause impulsive violent outbursts. *Id*. at 231. Sneed falsely testified that he took lithium one time by mistake and had never seen a psychiatrist. *Id*. at 235. Because Sneed's testimony was "the only direct evidence of Glossip's guilt of capital murder," his credibility was determinative of the case. *Id*. at 248. Correcting Sneed's testimony would have damaged his credibility, and it would have also undermined the state's theory that Sneed was a meek puppet who could not have been violent except at Glossip's direction. *Id*. at 249.

{¶ 22} Unlike in *Glossip*, Schneider's testimony was not "the only direct evidence of" Langille's guilt. *Id*. at 248. Schneider's testimony regarding Langille's conduct with A.B. was corroborated by other unchallenged evidence. Langille admitted that he took a bubble bath and a shower with A.B. at a hotel while Schneider was present. To further corroborate these incidents, photographs of the bubble bath, found on Langille's cell phone, were admitted into evidence at trial, along with a lodging receipt from the hotel where the bath took place. Text messages depicting Langille's sexual interest in A.B. were also admitted into evidence. Lastly, the forensic interview of A.B. was played for the jury. In it, A.B. claimed that on multiple occasions, Langille rubbed his penis on the outside and inside of her vagina, performed oral sex on her, and that she performed oral sex on him. This evidence further corroborated Schneider's testimony about the extent of the sexual acts performed on A.B.

{¶ 23} Moreover, Schneider's credibility was in question once her involvement in her daughter's sexual abuse was disclosed to the jury. " 'Where the undisclosed evidence merely furnishes an additional basis on which to challenge a witness whose credibility has already been shown to be questionable or who is subject to extensive attack by reason of other evidence, the undisclosed evidence may be cumulative, and hence not material.' "

*State v. Goff*, 2001 Ohio App. LEXIS 781, *16 (12th Dist. Mar. 5, 2001), quoting *Byrd v. Collins*, 209 F.3d 486, 518 (6th Cir. 2000).

{¶ 24} Based on the abundance of other evidence admitted at trial, we cannot say that evidence of Schneider's plea agreement " ' "in any reasonable likelihood [could] have affected the judgment of the jury." ' " *Glossip* at 246, quoting *Giglio* at 154, quoting *Napue* at 271. As such, we find that any error created by the nondisclosure of the plea agreement to be harmless beyond a reasonable doubt.

{¶ 25} Accordingly, Langille's first and second assignments of error are overruled.

{¶ 26} Langille's third and fourth assignments of error are related and are also addressed together. Langille argues that his trial counsel was ineffective because he failed to elicit testimony from Schneider regarding the plea agreement during cross-examination, failed to suppress prejudicial evidence, and failed to litigate a meaningful bill of particulars. Langille asserts that the state's failure to provide a bill of particulars with definite time frames deprived him of due process and a fair trial.

{¶ 27} Langille has the burden to show that he was denied the right to effective assistance of counsel and must satisfy a two-part test. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). First, he must demonstrate that trial counsel's performance was deficient because it "fell below an objective standard of reasonable representation." *Id.* at 688. Second, he must show that the deficient performance resulted in prejudice, which is shown by establishing that there was a reasonable probability that, but for trial counsel's errors, the result of the proceeding would have been different. *State v. Valentine*, 2016-Ohio-277 (10th Dist.). If one prong of the *Strickland* test is not satisfied, there is no need to consider the other. *State v. Beavers*, 2009-Ohio-4214, ¶ 8 (10th Dist.).

{¶ 28} Under the first prong, there is a strong presumption that counsel is competent. *State v. Southerland*, 2007-Ohio-379, ¶ 10 (10th Dist.). Counsel has latitude in choice of trial strategy, and trial strategy decisions may not be the basis of a finding of ineffective assistance. *State v. Zhu*, 2021-Ohio-4577, ¶ 53 (10th Dist.).

{¶ 29} The scope of cross-examination is a manner of trial strategy, and a decision to limit or expand questioning does not establish ineffective assistance of counsel. *State v. Campbell*, 2000-Ohio-183, ¶ 119. We should not " 'scrutinize trial counsel's strategic decision to engage, or not engage, in a particular line of questioning on cross-examination.' " *State v.*

*Dorsey*, 2005-Ohio-2334, ¶ 22 (10th Dist.), quoting *In re Brooks*, 2004-Ohio-3887, ¶ 40 (10th Dist.). "[A]n unsuccessful strategy does not render counsel's assistance constitutionally ineffective." *State v. Hunt*, 2013-Ohio-5326, ¶ 117 (10th Dist.).

{¶ 30} Langille alleges error in the failure to cross-examine Schneider regarding the plea agreement. However, the record demonstrates that counsel's failure to cross-examine Schneider did not constitute deficient conduct. During Schneider's cross-examination testimony, trial counsel asked for a sidebar conference to discuss the plea agreement and indicated that he was intending on questioning Schneider about the plea agreement. The trial court noted Schneider appeared fragile on the witness stand, and trial counsel recognized that Schneider may not have fully comprehended her plea agreement. When questioning resumed, counsel opted not to address the plea agreement.

{¶ 31} Trial counsel's decision not to elicit testimony about Schneider's plea agreement was a strategic decision and cannot be characterized as ineffective assistance. Langille has not shown that the failure to cross-examine Schneider fell below an objective standard of reasonable representation. *See State v. Turner*, 2010-Ohio-2630, ¶ 41 (6th Dist.).

{¶ 32} Langille next argued that trial counsel was ineffective for failing to suppress evidence that was more prejudicial than probative when text messages between Schneider and Langille and an email were admitted. The electronic communications dealt with Langille's sexual desires and the sexual abuse of A.B.

{¶ 33} "In order to prevail on a claim of ineffective assistance of counsel in a case involving a failure to make a motion on behalf of a defendant, the defendant must show '(1) that the motion . . . thereto was meritorious, and (2) that there was a reasonable probability that the verdict would have been different had the motion been made[.]' " *State v. Peterson*, 2008-Ohio-2838, ¶ 55 (10th Dist.), quoting *State v. Lawhorn*, 2005-Ohio-2776, ¶ 35 (3d Dist.).

{¶ 34} Appellate review of a trial court's decision to grant or deny a motion to suppress involves a mixed question of law and fact. *State v. Burnside*, 2003-Ohio-5372, ¶ 8. During a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility. *Id*. A reviewing court is bound to accept the trial court's findings of fact if they are

supported by competent, credible evidence. *Id.* "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*

{¶ 35} Langille concedes that some of the messages contained relevant material but asserts that their probative value was substantially outweighed by the danger of unfair prejudice. He further asserts that messages not relating directly to A.B. were irrelevant and unfairly prejudicial. Langille averred that the messages were admitted only to arouse emotions, evoke a sense of horror, and to appeal to an instinct to punish, violating his constitutional right to a fair trial.

{¶ 36} We have held that failure to move to suppress evidence does not automatically amount to ineffective assistance of counsel. *State v. Lee*, 2007-Ohio-1594, ¶ 12 (10th Dist.). Even if the motion to suppress would have been granted, failure to file a motion cannot be prejudicial unless there is also a reasonable probability that without the challenged evidence, the defendant would be acquitted. *State v. Malone*, 2011-Ohio-2445, ¶ 14 (9th Dist.). Langille does not attempt to explain how the trial outcome would have been different had the irrelevant text and email messages not been admitted. As detailed in our discussion of the first two assignments of error, there was ample additional evidence supporting Langille's convictions.

{¶ 37} Any decisions regarding the introduction of evidence and what motions should be filed "primarily involve trial strategy and tactics." *State v. Cline*, 2006-Ohio-4782, ¶ 22 (10th Dist.). Langille moved to suppress the testimony of expert witness Dr. Miceli, and to limit statements made by A.B. Counsel had a strategy to exclude evidence, and any failure to suppress particular messages was a tactical decision and not ineffective assistance. *See State v. Fort*, 2016-Ohio-1242, ¶ 35 (10th Dist.). Langille has done little to overcome the presumption that the failure to file a suppression motion was anything more than trial strategy. *See State v. Dantzler*, 2015-Ohio-3641, ¶ 21 (10th Dist.). Langille has not demonstrated a proper basis to suppress the communications, and there is no showing of success at trial in the absence of the messages. We do not conclude that there was a reasonable probability that Langille would have been acquitted if the messages were suppressed.

{¶ 38} Langille next alleges that he was prejudiced by the lack of specificity in the bill of particulars. He argues that trial counsel was deficient in not obtaining a meaningful bill of particulars, and that the state's failure to provide one deprived him of due process and a fair trial. We disagree.

{¶ 39} The Ohio Constitution entitles a person charged with a felony to an indictment containing the "nature and cause of the accusation," but a defendant may seek further specificity by requesting a bill of particulars. *State v. Sellards*, 17 Ohio St.3d 169, 170 (1985). Pursuant to Crim.R. 7(E), a defendant may request a bill of particulars from the state, which must supply specific dates and times of the alleged criminal conduct if it possesses the information. *State v. Haynes*, 2022-Ohio-4473, ¶ 26. The bill of particulars is not a discovery tool, and the state is not required to disclose all known facts or evidentiary details. *State v. Stuckey*, 2022-Ohio-4145, ¶ 19 (3d Dist.). A bill of particulars serves the limited purpose of informing a defendant of the charges against him with sufficient precision to allow preparation for trial. *State v. D.H.*, 2018-Ohio-559, ¶ 78 (10th Dist.).

{¶ 40} "A trial court must consider two questions when a defendant requests specific dates, times or places on a bill of particulars: whether the state possesses the specific information requested by the accused, and whether this information is material to the defendant's ability to prepare and present a defense." *State v. Lawrinson*, 49 Ohio St.3d 238, 239 (1990). A defendant seeking reversal based on an insufficient bill of particulars must demonstrate that the lack of knowledge of information not included in a bill of particulars prejudiced his or her defense. *State v. Chinn*, 1999-Ohio-288, ¶ 71. We must determine "whether the inexactitude of temporal information truly prejudices the accused's ability fairly to defend himself." *State v. Brown*, 2005-Ohio-5639, ¶ 48 (5th Dist.).

{¶ 41} To demonstrate prejudice from trial counsel's failure to request a more specific bill of particulars, Langille must show that, but for counsel's failure, there is a reasonable probability that the outcome would have been different. *State v. Hartman*, 2016-Ohio-2883, ¶ 47 (2d Dist.). If the failure to provide specific dates and times does not cause material detriment to a defendant's trial preparation, "the omission is without prejudice, and without constitutional consequence." *Sellards*, 17 Ohio St.3d at 172.

{¶ 42} Situations arise where the state is simply unable to comply with more specific dates and times. A lack of specific dates and times is unavoidable when the sexual abuse

victim is of tender years and unable to accurately apply a calendar date to an experienced event. *Brown* at ¶ 49; *State v. Gingell*, 7 Ohio App.3d 364, 368 (1st Dist. 1982). The record supports the implication that the state was not aware of additional information regarding the dates of the conduct.

{¶ 43} A description of when conduct is alleged to have occurred is generally irrelevant to the preparation of a defense in a child sex abuse matter. *In re Muth*, 2006-Ohio-1164, ¶ 13 (10th Dist.). The precise date and time of a rape charge is not an essential element of the crime. *State v. Reinhardt*, 2004-Ohio-6443, ¶ 20 (10th Dist.). An indictment involving the sexual abuse of a child does not have to specify exact dates and times of alleged crimes, but it must establish the time frame in which the alleged offenses occurred. *State v. Adams*, 2012-Ohio-5088, ¶ 24 (10th Dist.). A one-year time frame set out in the bill of particulars is reasonable and allows adequate preparation for a defense in a matter regarding sexual abuse against a minor. *See State v. Hedges*, 2013-Ohio-1645, ¶ 29 (5th Dist.).

{¶ 44} Langille alleges that he was prevented from asserting an alibi defense without knowledge of the alleged dates of the offenses. However, Langille did not attempt to assert an alibi defense and did not file a notice of alibi. We have found that failure to file an alibi notice "mitigates against the argument that the lack of specificity regarding dates and times was a material detriment to the preparation of his defense." *Muth*, 2006-Ohio-1164, at ¶ 10 (10th Dist.).

{¶ 45} Langille's defense centered on his denial of the allegations. Due process rights are not violated where a defendant who denied sexual contact with a victim is convicted of multiple counts because any lack of specificity regarding dates of alleged abuse did not prejudice a defendant's defense. *See State v. Czech*, 2015-Ohio-1536, ¶ 19 (8th Dist.); *State v. Latorres*, 2001 Ohio App. LEXIS 3533, *11 (11th Dist. Aug. 10., 2001) (if the evidence shows the defendant was alone with the victim during the relevant time frame and the defendant denies that any sexual abuse occurred, the failure to identify a specific date is not reversible error). A showing of prejudice is more likely when the age of a victim is an element of the crime and the victim is within one year of that age, or if a defendant was indisputably at another location, such as incarcerated, during a portion of the time period.

*State v. Barnes*, 2011-Ohio-5226, ¶ 15 (12th Dist.). Neither of those situations are present here.

{¶ 46} The indictment alleged Schneider and Langille engaged in offenses against A.B. as part of a course of conduct that occurred between October 7, 2020 through October 6, 2021 in various locations, which Langille concedes was narrowed to a three-month period based on the information contained in discovery. The bill of particulars sufficiently identified the alleged conduct, provided adequate notice of the charges, and provided protection from future jeopardy. The evidence placed the offenses within the general time frame of the dates specified in the bill of particulars. Langille did not explain what facts he could have obtained from a more specific bill of particulars that were not contained in discovery. Because the information Langille apparently sought was readily available from other sources, he suffered no consequence. *See Chinn*, 1999-Ohio-288, at ¶ 71.

{¶ 47} Langille cannot identify any actual prejudice from the lack of a meaningful bill of particulars. Any lack of specificity as to the time frame of the alleged offenses in the bill of particulars was not a material detriment to the preparation of Langille's defense. Further, the record supports a finding that trial counsel was not deficient and that Langille had a fair and adequate opportunity to defend the charges lodged against him. Accordingly, Langille's third and fourth assignments of error are overruled.

## IV. CONCLUSION

{¶ 48} Having overruled Langille's four assignments of error, we affirm the decision of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

DORRIAN and LELAND, JJ., concur.

_____