[Cite as *State v. Houser*, 2026-Ohio-32.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 24AP-651 |
| | | (C.P.C. No. 20CR-4371) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Kenneth L. Houser, Jr., | : | |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on January 8, 2026

**On brief:** *Shayla D. Favor*, Prosecuting Attorney, and *Benjamin A. Tracy*, for appellee. **Argued:** *Benjamin A. Tracy*.

**On brief:** *Kenneth L. Houser*, *Jr.*, pro se.

APPEAL from the Franklin County Court of Common Pleas

JAMISON, J.

{¶ 1} Defendant-appellant, Kenneth L. Houser, Jr., appeals from a conviction by jury trial in the Franklin County Court of Common Pleas. For the following reasons, we affirm the judgment of the trial court.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On September 17, 2020, a Franklin County Grand Jury indicted Houser on the following charges: Count 1, gross sexual imposition, a violation of R.C. 2907.05, a felony of the third degree; and Counts 2, 3, and 4, rape, violations of R.C. 2907.02, felonies of the first degree.

{¶ 3} On June 17, 2024, Houser's expert witness's report was disclosed and a notice was filed that the expert intended to testify. The report provided a broad overview of the

scientific literature on the limitations and vulnerabilities of human memory, the possibility of inadvertent false memory formation, and the reliability of source information. Nothing in the report specifically addressed the investigation or the children's disclosures of abuse.

{¶ 4} On October 7, 2024, at the outset of trial, counsel for Houser delivered a brief opening statement, urging the jurors to "[l]isten to all of the . . . testimony" and "keep an open mind." (Oct. 7, 2024 Tr. Vol. I at 38.) Counsel did not attempt to predict the witnesses' testimony.

{¶ 5} Prior to the presentation of witnesses, the defense learned that its expert witness had a scheduling conflict and would be unavailable to testify at trial. The defense requested permission for the expert to testify the following week. The trial court denied defense counsel's request for a continuance, reasoning that the trial was already underway and would likely conclude before the expert was available. Defense counsel neither subpoenaed the expert witness nor requested alternative methods of testimony, such as video conferencing.

{¶ 6} The trial court noted that the expert witness's report did not specifically apply to this case because "[i]t doesn't say anything in particular about these children and their ability to lie." (Tr. Vol. II at 125.) The court further observed that "[i]t's just a generic summary of memory testimony and leading stuff." *Id.* Ultimately, the defense's expert witness did not testify. The defense did not proffer the substance of the expert's anticipated testimony.

{¶ 7} K.C., mother of the two female victims, testified that in 2016, she, her husband, D.C., and their daughters lived with relatives in a residence on Dimson Drive in Whitehall, Ohio. Her cousin, J.B., the father of the male victim, owned the home. He lived there with his domestic partner and children. Houser occasionally stayed at the residence.

{¶ 8} K.C. further testified that three years after leaving Dimson Drive due to foreclosure, the two female victims reported that Houser had sexually abused them. K.C. then took them to Nationwide Children's Hospital ("NCH") for examination. The older of the two female victims testified that Houser inappropriately fondled her chest on one occasion. The younger female victim testified that Houser compelled her to perform oral sex and, on another occasion, inappropriately touched her lower genital area.

{¶ 9} The youngest and sole male victim testified that while he lived with his cousins on Dimson Drive, Houser often served as his babysitter and compelled him to perform oral sex multiple times. J.B., the victim's father, testified that upon hearing the allegations of abuse, he asked his son whether Houser had sexually abused him. J.B.'s son said yes. After receiving that response, J.B. contacted authorities and took his son to NCH for examination. During cross-examination, the defense questioned J.B. about his conversation with his son regarding the alleged abuse. J.B. reiterated that his son told him Houser had abused him while they lived on Dimson Drive. The defense counsel asked no further questions on the matter.

{¶ 10} The medical personnel who examined the victims at NCH also testified. They reported that each child stated that Houser had abused them.

{¶ 11} On direct examination, Houser testified that at some point, J.B. fell behind on the mortgage and asked Houser for help paying the bill. Houser declined to give J.B. any money, stating that he did not consider it "[his] responsibility" to assist, even though he could have. (Tr. Vol. IV at 309.) The house was subsequently foreclosed. Houser further testified that he believed J.B. fabricated the allegations out of vengeance for his refusal to help with the mortgage, which led to the foreclosure of J.B.'s home.

{¶ 12} The jury found Houser guilty as charged in the indictment. The trial court sentenced him to 60 months on the gross sexual imposition count and to life without the possibility of parole on the rape counts. The sentences on the rape counts were ordered to be served concurrently to each other, but consecutively to the sentence for gross sexual imposition. Houser was ordered to register as a Tier III Sex Offender.

{¶ 13} Houser now brings this appeal.

## II. ASSIGNMENT OF ERROR

{¶ 14} Houser assigns the following as trial court error:

> Defendant-Appellant was deprived of the effective assistance of trial counsel in violation of Defendant-Appellant's rights under the Sixth and Fourteenth Amendments to the United States Constitution, and Section 10 and 16, Article I of the Ohio Constitution.

### III.  LEGAL ANALYSIS

{¶ 15} By his sole assignment of error, Houser argues that he did not receive effective assistance of counsel.  Houser contends that trial counsel was ineffective because counsel (1) failed to secure the testimony of a retained expert witness, (2) presented an insufficient and defective opening statement, and (3) failed to adequately cross-examine witness J.B. about a potential theory of vengeance toward Houser.

{¶ 16} Houser further asserts in his pro se reply brief that if the expert witness had been allowed to testify, he would have been able to question the medical personnel who interviewed the victims and the victims themselves.  He also claims that the delay in securing the expert witness was due to financial hardship.  Additionally, Houser raises, for the first time, the argument that the trial judge's dual role created an undisclosed conflict of interest that violated due process.

{¶ 17} As a last resort, Houser asserts that even if none of these arguments alone satisfy the requirements for an ineffective assistance of counsel claim, the cumulative effect of his trial counsel's ineffective assistance warrants reversal of his conviction.

{¶ 18} To prevail on an ineffective-assistance claim, Houser must satisfy a two-pronged test.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  First, Houser must show that trial counsel's performance was deficient.  *Id*.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed to the defendant by the Sixth Amendment.  *Id*.  When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness.  *Id*. at 688.

{¶ 19} If the defendant shows that counsel's performance was deficient, then the second prong of the *Strickland* test requires that the defendant prove prejudice to prevail.  *Id*. at 687.  To prove prejudice, the defendant must show that there is a "reasonable probability" that but for counsel's unprofessional errors, the result of the proceeding would have been different.  *Id*. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id*.  "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  *Id*. at 695.

{¶ 20} For a court to conclude that trial counsel has provided ineffective assistance, the defendant must overcome a strong presumption that the challenged action might constitute sound trial strategy. *State v. Mohamed*, 2017-Ohio-7468, ¶ 18. Even questionable trial strategies do not rise to the level of ineffective assistance of counsel. *Id.*; *accord State v. Cepec*, 2016-Ohio-8076, ¶ 111, quoting *State v. Leonard*, 2004-Ohio-6235, ¶ 146 (" '[D]ebatable trial tactics do not establish ineffective assistance of counsel.' ").

{¶ 21} Houser first argues that his trial counsel was ineffective for failing to bring the expert witness to trial, or to request accommodations for the expert to appear via video conferencing or other electronic means. Even if we assume that trial counsel's performance was deficient for failing to bring the expert witness to trial, Houser fails to satisfy the prejudice prong of the *Strickland* test. Houser asserts that the failure to have the expert witness testify at trial prevented him from challenging the alleged emergence of new allegations at trial, confronting suggestive questioning by non-professionals, and objecting to the trial court's mischaracterization of memory science. However, Houser has not shown that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

{¶ 22} Under Crim.R. 16(K),

> [a]n expert witness for either side shall prepare a written report summarizing the expert witness's testimony, findings, analysis, conclusions, or opinion, and shall include a summary of the expert's qualifications. The written report and summary of qualifications shall be subject to disclosure under this rule no later than twenty-one days prior to trial, which period may be modified by the court for good cause shown, which does not prejudice any other party. Failure to disclose the written report to opposing counsel shall preclude the expert's testimony at trial.

"The plain language of Crim.R. 16(K) expressly provides that the consequence for failing to disclose an expert's report as required: 'Failing to disclose the written report to opposing counsel shall preclude the expert's testimony at trial.' " (Emphasis omitted.) *State v. Boaston*, 2020-Ohio-1061, ¶ 55, quoting Crim.R. 16(K). Alleged issues not set forth in a written report will not be considered by the trial court. *Id.* at ¶ 59. Consequently, an expert witness may not testify to issues not set forth in their report.

{¶ 23} Here, Houser submitted an expert report outlining what the expert witness was to testify about at trial. However, the report provided only a broad overview of scientific concepts, including the limitations and vulnerabilities of human memory, the possibility of inadvertently creating false memories, potential issues in forensic interviews, and source misattribution. (June 17, 2024 Expert Report.) The report did not allege any specific errors by the interviewers who interacted with the three children. Nor did it offer any opinions, findings, analyses, or conclusions regarding the memories of the three victims. Due to the lack of specificity, the expert would not have been able to challenge the interviewers' conduct, the victims' interviews, or the witnesses' testimony at trial. Thus, Houser cannot show that the absence of the expert's testimony prejudiced him, as the expert would not have been legally allowed to testify about anything specifically relating to the interviews, the medical personnel who interviewed the children, or the children themselves. As a result, this claim of ineffective assistance of counsel fails on the second prong of the *Strickland* test. Houser is unable to show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

{¶ 24} Notably, Houser, for the first time in his May 15, 2025, pro se reply brief, raises the claim that financial hardship caused the delay in retaining the expert witness. However, nothing in the record supports this. In a direct appeal, "it is impossible to determine whether [an] attorney was ineffective in his representation . . . where the allegations of ineffectiveness are based on facts not appearing in the record." *State v. Cooperrider*, 4 Ohio St.3d 226, 228 (1983); *accord State v. Cole*, 2025-Ohio-675, ¶ 7 (2d Dist.) ("Off-the-record events or conversations will not support an ineffective-assistance claim on direct appeal."). Consequently, a direct appeal is not the appropriate forum to consider a claim of ineffective assistance of trial counsel that turns on information outside the record. *State v. Bunch*, 2022-Ohio-4723, ¶ 35; *accord State v. Kennard*, 2016-Ohio-2811, ¶ 23 (holding that, where proof outside the record is necessary to support a claim for ineffective assistance of trial counsel, the claim is purely speculative and not appropriate for consideration on direct appeal).

{¶ 25} Houser bases his ineffective-assistance claim on evidence outside the record. Nowhere in the record does it appear that Houser faced financial hardship. Because Houser bases his ineffective-assistance claim on evidence outside the record, the claim is barred

from review. As a result, we cannot consider that claim on direct appeal. *See State v. Ahart*, 2025-Ohio-1561 (10th Dist.) (appellant's ineffective-assistance claim, which was based on allegations that his trial counsel made off-the-record promises about his sentence, could not be reviewed on direct appeal because it relied on evidence outside the record).

{¶ 26} Houser next argues that his trial counsel was ineffective for providing an insufficient and defective opening statement. Here, trial counsel asked the jurors to "[l]isten to all of the . . . testimony" and "keep an open mind." (Tr. Vol. I at 38.) Counsel did not attempt to predict the witnesses' testimony. Houser argues that the opening statement was deficient for failing to describe to the jury what the evidence would show and for failing to provide the jury with any theory of the case.

{¶ 27} Houser, however, cites no authority requiring his trial counsel to make a more detailed opening statement. To the contrary, trial counsel's decision to give a brief opening statement may have been tactical. It is well-established that the decision to provide a short opening statement is tactical. *State v. Addison*, 2004-Ohio-5154, ¶ 13 (10th Dist.). Even trial counsel's decision to forego an opening statement altogether does not constitute ineffective assistance of counsel where the decision is tactical. *State v. Horton*, 2007-Ohio-4309, ¶ 45 (10th Dist.). Therefore, because trial counsel's decision to give a brief opening statement may have been motivated by trial strategy, and thus not deficient, Houser cannot satisfy the first prong of the *Strickland* test.

{¶ 28} Furthermore, even if the opening statement was deemed deficient, we do not see how it, in the context of the entire proceeding, had a prejudicial impact on Houser's substantial rights or deprived Houser of a fair trial. Houser has not shown how the trial's outcome would have differed had trial counsel delivered a more robust opening statement. The trial court instructed the jury that "[o]pening statements are not evidence. They are not to be considered evidence, but they are counsel's opportunity to tell you what the evidence will be." (Tr. Vol. I at 33.) It is presumed that "the jurors followed these instructions and that the verdict was not, therefore, based on the content of the closing arguments." *State v. Thompson*, 2017-Ohio-792, ¶ 26 (3d Dist.), citing *Pang v. Minch*, 53 Ohio St.3d 186, 187 (1990). Because Houser has given no reason to disregard this presumption, we conclude that the verdict would have been the same with or without a

more robust opening statement. Thus, this claim of ineffective assistance of counsel also fails under the second prong of the *Strickland* test.

{¶ 29} Next, Houser argues that his trial counsel was ineffective for failing to cross-examine J.B. about Houser's refusal to assist with payment of J.B.'s mortgage, which ultimately led to foreclosure and loss of the home. Due to this omission during cross-examination, Houser believes his trial counsel was not permitted to question him about the theory of vengeance.

{¶ 30} Counsel has latitude in choosing a trial strategy, and such decisions may not form the basis for a finding of ineffective assistance. *State v. Zhu*, 2021-Ohio-4577, ¶ 53 (10th Dist.). "The scope of cross-examination falls within the ambit of trial strategy, and debatable trial tactics do not establish ineffective assistance of counsel." *State v. Conway*, 2006-Ohio-2815, ¶ 101, citing *State v. Hoffner*, 2004-Ohio-3430, ¶ 45. "[A] decision to limit or expand questioning does not establish ineffective assistance of counsel." *State v. Langille*, 2025-Ohio-5482, ¶ 29 (10th Dist.), citing *State v. Campbell*, 2000-Ohio-183, ¶ 119. We should not " 'scrutinize trial counsel's strategic decision to engage, or not engage, in a particular line of questioning on cross-examination.' " *State v. Dorsey*, 2005-Ohio-2334, ¶ 22 (10th Dist.), quoting *In re Brooks*, 2004-Ohio-3887, ¶ 40 (10th Dist.).

{¶ 31} Here, trial counsel's decision not to cross-examine J.B. about issues related to an alleged theory of vengeance was strategic and cannot be characterized as ineffective assistance of counsel. There is no way to know what J.B. would testify to, and any potential answers he might give would be outside the record. In fact, questioning J.B. about the alleged theory could have opened the door to more damaging testimony for Houser's case. Because strategy may have motivated trial counsel's cross-examination of J.B., Houser cannot satisfy the first prong of the *Strickland* test.

{¶ 32} Nevertheless, even if we assume that trial counsel was deficient in limiting the scope of cross-examination of J.B., Houser cannot prevail on his ineffective assistance claim because he fails to demonstrate prejudice. Houser's claim that trial counsel could not question him about the theory of vengeance is contradicted by the record. In fact, Houser testified that he believed J.B. was "vindictive and very vengeful" because of the foreclosure of the home and the fact that J.B. worked so hard to get the house. (Tr. Vol. IV at 310.) Thus, because Houser was able to introduce the alleged theory of vengeance, there is not a

reasonable probability that, but for counsel's manner of cross-examining J.B., the outcome of the trial would have been different.  Consequently, trial counsel's manner of cross-examining J.B. does not constitute ineffective assistance of counsel.

{¶ 33} Finally, we address Houser's argument that the cumulative effect of his trial counsel's ineffective assistance, taken together, warrants reversal of his conviction.  Under the doctrine of cumulative error, "a judgment may be reversed where the cumulative effect of errors deprives a defendant of his constitutional rights, even though the errors individually do not rise to the level of prejudicial error." *State v. Johnson*, 2010-Ohio-5440, ¶ 34 (10th Dist.), citing *State v. Garner*, 1995-Ohio-168, ¶ 62.  "[W]hen none of [an appellant's] individual claims of ineffective assistance of counsel have merit, cumulative error cannot be established simply by joining those meritless claims together." *State v. Graham*, 2020-Ohio-6700, ¶ 170; *see also Columbus v. Beasley*, 2019-Ohio-719, ¶ 80 (10th Dist.) ("[N]one of appellant's individual claims of ineffective assistance of counsel has merit.  Appellant cannot establish he is entitled to relief simply by combining those unsuccessful claims together.").

{¶ 34} Here, as discussed above, we find no merit in any of Houser's claims of ineffective assistance of counsel.  Because none of Houser's individual claims of ineffective assistance have merit, he cannot demonstrate cumulative error.

{¶ 35} Notably, Houser, for the first time, claims that the trial judge's "dual role" created an undisclosed conflict of interest.  He argues that this ultimately violated his due process rights, as outlined in Section IX of Houser's reply brief.  These new claims will not be discussed.  "A reply brief affords an appellant an opportunity to respond to an appellee's brief, . . . and it is improper to use it to raise a new issue." *State v. Mitchell*, 2011-Ohio-3818, ¶ 47 (10th Dist.).  *See also State ex. rel. Bryant v. Indus. Comm.*, 2008-Ohio-3292, ¶ 5 (10th Dist.) ("The purpose of a reply brief is to afford the appellant . . . with an opportunity to 'reply' to the arguments in appellee's/respondent's brief, not to raise a new argument for the first time.").  Here, Houser does not cite any record evidence regarding the trial judge's "dual role."  Nor does he present any legal authority in the reply brief to support this new claim.  Consequently, we decline to address this argument.

{¶ 36} Accordingly, we overrule Houser's sole assignment of error.

## IV. CONCLUSION

{¶ 37} For the foregoing reasons, we overrule Houser's sole assignment of error and affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BEATTY BLUNT and DINGUS, JJ., concur.

_____